UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AARON MARTINEZ

VERSUS

SID J. GAUTREAUX, III,
IN HIS OFFICIAL CAPACITY
AS SHERIFF OF EAST
BATON ROUGE PARISH;
EAST BATON ROUGE PARISH
SHERIFF'S OFFICE; AND
DEPUTY SHAWN GLOVER

CIVIL ACTION

NO. 10-847-BAJ-CN

## RULING ON MOTION TO DISMISS

This matter is before the Court on defendants', Sid Gautreaux, III, in his capacity as Sheriff of East Baton Rouge Parish ("the Sheriff"), the East Baton Rouge Parish Sheriff's Office[1], and Deputy Shawn Glover ("Glover") (collectively "Defendants") motion to dismiss (doc. 14) the action pursuant to Fed. R. Civ. P. Rules 12(b)(5) and (b)(6). Aaron Martinez ("Martinez" or "Plaintiff") has opposed the motion (doc. 22). Jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. §1367.

---

[1] Plaintiff submits that there is no legal entity described as East Baton Rouge Sheriff's Office, and does not object to the dismissal of this defendant. As such, the East Baton Rouge Sheriff's Office is dismissed from this suit.

## BACKGROUND AND FACTS

Plaintiff alleges that on or about January 2, 2010, his neighbor, Dewey Johnson, was burning trash in an oil drum, resulting in the Fire Department and Sheriff's Office being called to the scene by another neighbor.[2] Plaintiff further alleges that, after the firemen arrived and extinguished the fire, he walked over to the property, and Glover harassed him even though Plaintiff asserts that he was not involved in the fire. Plaintiff submits that he was making a phone call when Deputy Glover ordered him to end the call, and to put the phone down. Deputy Glover then grabbed the cell phone from Plaintiff. Plaintiff alleges that he was walking away from Glover when Glover tased him, causing him to lose consciousness, fall to the ground and injure his face, mouth, and other areas of his body. Plaintiff asserts that he feared for his life, so once he regained consciousness, he ran to his house, where he was later arrested. Plaintiff avers that Glover did not have probable cause to taser Plaintiff nor arrest him. (Compl., ¶¶3-4).

Plaintiff asserts that trial was held in the criminal matter in the 19th Judicial District Court and that he was convicted of the charge against him of disturbing the peace, but acquitted of the charge against him of resisting arrest. Plaintiff alleges that: (1) Glover used unwarranted and excessive force; (2) Glover arrested Plaintiff without probable cause and caused him to be incarcerated; (3) Glover caused Plaintiff to be charged with a misdemeanor violation; (4) the

---

[2] Plaintiff has not identified the other neighbor referenced in ¶ 3 of the complaint.

Sheriff failed to properly supervise employees under his command, custody and control; (5) the Sheriff failed to determine if his employees were properly trained and qualified with regard to arrests and tasing; and (6) the Sheriff failed to ascertain if the officers were violating policy and procedures in violation of 42 U.S.C § 1983, the doctrines of *respondeat superior* and vicarious liability, and state tort law. (Compl., ¶ 10).

Plaintiff filed suit on December 17, 2010 (doc 1). On April 15, 2011, Plaintiff filed a motion for extension of time for service of process (doc. 5). Plaintiff was granted an additional 30 days to serve Defendants (doc. 6). On May 19, 2011, Defendants filed a motion to dismiss (doc. 14), alleging that the action should be dismissed due to: (1) failure to timely serve Defendants; (2) insufficient service of process; (3) failure to state a claim; and (4) that the Court should decline to exercise supplemental jurisdiction as to Plaintiff's state law claims (doc. 14).

## ANALYSIS

### I. Failure to Timely Serve Defendants

Pursuant to Fed. R. Civ. P. Rule 4(m), a defendant is required to be served within 120 days of the filing of the complaint. Rule 4(m) provides in pertinent part:

> **Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a

specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Here, the Court extended Plaintiff's time to serve Defendants from 120 days to 150 days (doc. 6). Both parties assert that Plaintiff effected service on the Sheriff on April 29, 2011, 133 days after the commencement of this action, and within 150 days from the filing of the complaint (doc. 14-1, p. 2; doc. 23, p. 2). Additionally, both parties allege that Plaintiff effected service on Glover on May 4, 2011, 138 days after the commencement of the action, and also within the 150 days allowed by the Court (*Id*). Thus, the Court finds that Defendants were timely served, and Defendants' argument is without merit.

II.   **Insufficient Service of Process of Glover**

Pursuant to Fed. R. Civ. P. Rule 4(e):

> **(e) Serving an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
> **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> **(2)** doing any of the following:
> **(A)** delivering a copy of the summons and of the complaint to the individual personally;
> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Under Louisiana law, service may be made on an individual personally or by domiciliary service. Louisiana law provides that "[p]ersonal service is made when a proper officer tenders the citation or other process to the person to be served." La. Code. Civ. Pro. art. 1232. "Personal service may be made anywhere the officer making the service may lawfully go to reach the person to be served." Art. 1233. "Domiciliary service is made when a proper officer leaves the citation or other process at the dwelling house or usual place of abode of the person to be served with a person of suitable age and discretion residing in the domiciliary establishment." Art. 1234.

Defendants assert that Plaintiff has not properly served Glover, as personal service has not been made on him. Defendants further assert that, because the summons was served on the "Civil Division, East Baton Rouge Sheriff's Office" on May 4, 2011, and Glover is not employed in the Civil Division and has not authorized anyone within the Civil Division to accept service of process on his behalf, he was not properly served, and the claims against him should be dismissed. (Doc. 14-1, pp. 3-4).

Plaintiff contends that Glover was served with the summons and petition at his house, but refused to accept it.[3] Plaintiff alleges that, thereafter, his attorney

---

[3] Plaintiff submitted a sworn affidavit from the process server regarding his attempts to serve Glover:

hired a retired State Trooper, Harold M. Harris ("Harris"), to assist him in serving Glover (doc. 23, p. 3). Plaintiff asserts that his attorney and Harris went to the Sheriff's Office's substation, where Glover was assigned to report for duty, before Glover's assigned shift to attempt to serve him there (doc. 23, p. 3). Plaintiff submits that Harris entered the office and informed a lieutenant that he wanted to serve Glover with an individual summons, and the lieutenant told him that Glover was not there (doc. 23, p. 4). Plaintiff avers that the lieutenant gave Harris a phone number and told him to call the number and that he would be instructed as to how to properly serve Glover. (*Id*). Plaintiff asserts that his attorney called the phone number and was connected to an employee of the East Baton Rouge Sheriff's Civil Processing office, who instructed him to bring the summons and petition to their office, and they would have Glover served (*Id*). Plaintiff alleges

> The second attempt for delivery was at Deputy Glover's place of residence. I knocked on the door of the house I believed to be his but received no answer so I went across the street to make sure I was at the right house since the mailboxes were at the street and I was not sure if I had the right house. I knocked on the second house and received no answer. As I was walking back to my vehicle, which was parked on the street in the front of his house, Deputy Glover poked his head out the door and asked what I wanted. As I walked to the front door, I informed Deputy Glover that I was there to serve him papers. I held out the folder which contained the summons and petition a few inches from the door, well within his reach, but he refused to take them. He instead responded with, "Who are you? I don't know you." I answered, "I am here to serve you papers", [sic]
> He then asked for my I.D., but I told him that it was in my vehicle and that I was simply there to give him the papers. Once again I held the folder out to him but he still refused to take it. He once again said he didn't know me and slammed the door in my face. I waited for a moment, then walked back to my vehicle and left.

(Doc. 23-1, p. 2).

that his attorney did as directed, and service was made on Glover (*Id*). Proof that service was made on Glover was submitted as a service return by the Sheriff's office and filed into the record (*see* doc. 25).

The Fifth Circuit has held that a "district court enjoys a broad discretion in determining whether to dismiss an action for ineffective service of process." *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1115 (5th Cir. 1986). "When service of process is challenged, the party on whose behalf service was made bears the burden of establishing its validity." *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981). "That burden can generally be met by producing the return of service, which is *prima facie* evidence of the manner in which service was made." *Seal v. State*, 2005 WL 3543836 (E.D. La. Oct. 18, 2005); *See also* La. Code Civ. Pro. art 1292[4]; *Bravo v. Borden*, 3 So.3d 505, 509 (La. App. 5 Cir. 2008).

Here, the service return in the record shows that service was made on Glover on May 5, 2011 (doc. 25, p. 1). This is sufficient to satisfy Plaintiff's

---

[4] Art. 1292 provides:

> The sheriff shall endorse on a copy of the citation or other process the date, place, and method of service and sufficient other data to show service in compliance with law. He shall sign and return the copy promptly after the service to the clerk of court who issued it. The return, when received by the clerk, shall form part of the record, and shall be considered prima facie correct. The court, at any time and upon such terms as are just, may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

burden of producing prima facie evidence that service was made, and the burden thus shifts to Defendants to produce evidence showing that the service was improper. Defendants argue that the service of process in this case was invalid because it appears that service was made on the Civil Division of the Sheriff's office, and Glover is neither employed in the Civil Division nor has authorized anyone within the Civil Division to accept service of process, which is not a method of service permitted under either Fed. R. Civ. P. Rule 4 or Louisiana law (doc. 14-1, p. 4).

The Court finds that Defendants have not produced sufficient evidence to show that service on Glover was improper. As mentioned, previously, Glover, himself, was presented with the summons and petition at his domicile, but chose not to accept service. The record further reflects that Plaintiff tried, on numerous occasions, to perfect service on Glover. As such, the Court will not dismiss Plaintiff's claims against Glover because of alleged insufficient service of process.

### III. Failure to State a Claim

Pursuant to Fed. R. Civ. P. Rule 12(b)(6), a defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Fed. R. Civ. P. Rule 8(a)(2), which provides, in relevant part, that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *In re McCoy*, 666 F.3d 924,

926 (5th Cir. Jan. 4, 2012). "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010). A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Id.* The complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The Court is tasked with determining whether Plaintiff has stated a legally cognizable claim that is plausible, not evaluating Plaintiff's likelihood of success on the claims. *Lone Star Fund,* 594 F.3d at 387. Therefore, the Court must review Plaintiff's pleadings, including his legal arguments, to ascertain whether he plausibly states a claim that Defendants are liable to Plaintiff for excessive force, unlawful arrest, malicious prosecution, and failure to supervise employees.

Defendant asserts that Plaintiff "has failed to state a claim for relief that is plausible on its face," as the "complaint contains no specific factual allegations whatsoever regarding the above named defendants" (doc. 14-1, p. 5). Plaintiff submits that paragraph four of his Petition for Damages (compl., ¶4) "contains a short and plain statement of the claim showing the Pleader (Plaintiff) is entitled to

relief" (doc. 23, p. 7).[5] Defendants further assert that Plaintiff fails to state a section 1983 claim against Defendants (doc. 14-1, p. 5). Plaintiff asserts that he has been deprived of the federal right to be free from wrongful arrest, malicious prosecution, and excessive force in connection with his arrest made by Glover (doc. 23, p. 8).

The Fifth Circuit has held that to state a claim pursuant to § 1983, "a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005). The Fifth Circuit cautioned that a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *S. Christian Leadership Conf. v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001). In considering a 12(b)(6) motion to

---

[5] Paragraph four states:

> The firemen arrived and put out the burning trash. Subsequently, Plaintiff walked over to the Johnson property, whereupon Deputy Shawn Glover, Badge Number 1629, arrived and began harassing Plaintiff, although Plaintiff was not involved in the burning of the trash. Plaintiff was in the process of making a phone call, whereupon Deputy Glover ordered him to end the call, and to put the phone down. Deputy Glover then grabbed the cell phone from Plaintiff, whereupon Plaintiff determined that he should get away from Deputy Glover. As Plaintiff was walking away, Deputy Glover tasered [sic] Plaintiff, causing Plaintiff to lose consciousness, fall to the ground and injure his face, mouth and body. Upon regaining consciousness, and being in fear for his life, Plaintiff ran to his residence across the street from the Dewey Johnson residence. Thereafter, Plaintiff was arrested, all without probable cause.

(Compl., ¶4).

dismiss in a section 1983 law suit, "the focus should be whether the complaint properly sets forth a claim of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States caused by persons acting under color of state law." *Id.* After a review of the motion to dismiss, if the court finds that there is no deprivation of any protected right, the claim should be dismissed." *Id.*

### A. Claims Against East Baton Rouge Sheriff's Office

The parties agree that there is no legal entity described as East Baton Rouge Sheriff's Office, and that the claims asserted against the East Baton Rouge Sheriff's Office should be dismissed (doc. 23, p. 11; doc. 14-1, pp. 11-12). The Court concurs. Accordingly, the Court dismisses the claims against the East Baton Rouge Sheriff's Office.

### B. Claims Against the Sheriff in his Official Capacity

Defendants assert that Plaintiff's section 1983 official capacity claims against the Sheriff should fail because Plaintiff has failed to: (1) allege that an official policy or custom of the East Baton Rouge Parish Sheriff caused the alleged deprivation of a constitutional right; and (2) provide any factual support that the Sheriff is liable for having knowledge that there were customs, practices, and policies within the East Baton Rouge Parish Sheriff's Office which were the cause of Plaintiff's arrest, malicious prosecution, and use of force by the deputy (doc. 14-1, p. 8). Plaintiff asserts that "the only way to determine whether or not there was a failure by Sheriff Sid Gautreaux to properly train and supervise, and

whether or not it was an indifference, is to engage in discovery, whereby Plaintiff may secure and discover any policies or customs implemented by the Sheriff's department in regard to using tasers, and what restrictions there might exist in regard to these policies and customs" (doc. 23, p. 10). The Court notes that Plaintiff has not identified an official policy or custom implemented by the Sheriff's department pertaining to the use of tasers.

Suits against a public official in his official capacity "generally represent only another way of pleading against the government entity for which the official is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. New York City Dep't of Soc. Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). Therefore, suits against a public official in his official capacity should be treated as a suit against the government entity itself. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). In an official capacity suit against a public official, the government entity's policy or custom must have played a role in the constitutional violation. *Hafer,* at 25; *Kentucky,* 473 U.S. at 166. The Fifth Circuit has held that municipal liability under section 1983 requires proof of three elements: (1) a policy maker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff asserts that the Sheriff failed to: (1) properly supervise employees under his command, custody, and control; (2) determine if his employees were

properly trained and qualified with regard to arrests and tasing; and (3) ascertain if the officers of the East Baton Rouge Sheriff's Office were violating policy and procedures (compl., ¶ 10.D-F). However, as mentioned, *supra*, Plaintiff fails to identify an official policy or custom that the Sheriff allegedly violated. As such, the Court will allow limited discovery to enable Plaintiff to ascertain the existence of an official policy or custom with regard to the use of tasers.

Turning to Plaintiff's failure to properly train and supervise claim, the Supreme Court has recognized that a municipality can be liable under section 1983 for the "policy or custom" of its failure to train its employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989). Plaintiff asserts that he may have a claim against the Sheriff based on the theory of *respondeat superior* or vicarious liability. Specifically, Plaintiff alleges that the Sheriff failed to properly train and supervise his employees (doc. 23, p. 10).

The Fifth Circuit has held that a sheriff who was not personally involved in the acts that deprived a victim of constitutional rights is liable under section 1983 if a plaintiff can show that: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional

rights.[6] *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002). The Court has warned that "[p]roof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that such a lack of training or supervision caused a violation of her constitutional rights." *Cozzo*, at 286-87. "[T]he training's inadequacy must be obvious and obviously likely to result in a constitutional violation." *Id.*, at 287.

Plaintiff asserts that Defendants' motion to dismiss is premature as to the issue of the Sheriff's failure to properly train and supervise because the parties have yet to engage in discovery, and the Court agrees (doc. 23, p. 10). As such, the Court finds that it is necessary for the parties to engage in limited discovery as to the issue of the Sheriff's alleged failure to train and supervise employees, thus Plaintiff's claims against the Sheriff, in his official capacity, should not be dismissed.

### C.  Claims Against Glover in his Official Capacity

The Fifth Circuit has defined a "policy maker" as:

> officials or governmental bodies who speak with final policy making authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.

*Davis v. Ector County, Tex.*, 40 F.3d 777, 784 n. 29 (5th Cir. 1994). Defendants assert that any claim against Glover in his official capacity should fail because Plaintiff has failed to allege that Glover is a "policy maker" within the East Baton

---

[6] "A municipality's failure to train its police officers can without question give rise to § 1983 liability." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

Rouge Sheriff's Office (doc. 14-1, p. 9). The Court agrees. Claims against Glover, in this official capacity, shall be dismissed, as the Court finds no evidence in the record that he is considered a "policy maker."

### D. Claims Against Glover in his Individual Capacity

Defendants assert that Glover is entitled to qualified immunity as to Plaintiff's individual capacity claims against him, as Plaintiff has not alleged that Glover, through his individual actions, has violated the Constitution or that the action he took was not objectively reasonable under the circumstances (doc. 14-1, p. 10).

"Public officials acting within the scope of their official duties are shielded from civil liability by the doctrine of qualified immunity." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995). However, qualified immunity does not shield a public official whose conduct violates clearly-established constitutional rights, if a reasonable person would have known that such conduct was unconstitutional. *Id.* When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To discharge this burden, a plaintiff must satisfy a two-prong test that (1) defendant committed a constitutional violation under the law; and (2) defendant's actions were objectively unreasonable in light of the law that was clearly established. *Id.* "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he

is doing violates that right." *Id.* The Court will apply these standards to Glover's assertion of qualified immunity regarding Plaintiff's alleged (1) wrongful arrest and malicious prosecution; and (2) Glover's use of excessive force.

### i. Wrongful Arrest and Malicious Prosecution

Plaintiff claims that Defendants are liable for wrongful arrest and malicious prosecution because Glover arrested Plaintiff without probable cause and he was subsequently charged with a misdemeanor violation (compl., ¶ 10.B-C). Defendants submit that Plaintiff's claims of wrongful arrest and malicious prosecution are not cognizable pursuant to section 1983 because a judgment in Plaintiff's favor would imply the invalidity of his underlying state court conviction of disturbing the peace (doc. 14-1, p. 10).

The Court must first consider whether Glover committed a constitutional violation under the law. "An arrest is unlawful unless it is supported by probable cause." *Flores v. City of Palacios*, 381 F.3d 391, 396, 402 (5th Cir. 2004). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* Pursuant to *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L. Ed. 2d 383 (1994), when a plaintiff brings a section 1983 claim against the arresting officer and his supervisor, "the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

"If so, the claim is barred unless he proves that his conviction or sentence has been reversed on direct appeal, expunged by executive order, [or] declared invalid by a state tribunal authorized to make such determination[.]" *Id.*

Thus, the Court must determine whether a judgment in Plaintiff's favor on the claim of unlawful arrest would imply the invalidity of his conviction for disturbing the peace. Pursuant to LSA-R.S. § 14:103, Disturbing the Peace, "[w]hoever commits the crime of disturbing the peace shall be. . .imprisoned. . ." As Plaintiff was ultimately convicted of disturbing the peace, the penalty of which can include imprisonment, the Court finds that a favorable judgment on Plaintiff's claim of unlawful arrest would imply the invalidity of his underlying criminal conviction.[7] Therefore, Plaintiff's claim of unlawful arrest must be dismissed.

Turning to the malicious prosecution claim, in addition to the fact that the Fifth Circuit has held that "no freestanding constitutional right to be free from malicious prosecution exists," the Court finds that Plaintiff's claim of malicious prosecution must be dismissed for the same reasons that his claim of unlawful arrest is dismissed. *Deville v. Marcantel*, 567 F.3d 156, 169-70 (5th Cir. 2009); *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).[8]

---

[7] The Court notes that neither party included a citation to, or record of, the underlying state court case.

[8] In *Deville*, 567 F.3d 169-70, the Fifth Circuit explained that:

> [T]he federal Constitution does not include a freestanding right to be free from malicious prosecution. it must be shown that the officials violated specific constitutional rights in connection with a "malicious prosecution." For example, the initiation of criminal charges without probable cause may set in force events that run

### ii. Excessive Force

Plaintiff alleges that Glover's use of force caused him to suffer severe injuries to his neck, mouth, teeth, and face (compl., ¶ 8.a-c), and that he was subsequently not convicted of resisting arrest in state court (doc. 23, p. 2). Defendants do not move to dismiss Plaintiff's claim that Glover used excessive force on Plaintiff, and the Court notes that Plaintiff has a constitutional right to be free from excessive force pursuant to the Fourth Amendment if Plaintiff can show that he was seized. *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).[9] Accordingly, Plaintiff's claim against Glover for excessive force is not dismissed.

### D. State Law Claims

Defendants assert that if the Court dismisses all of Plaintiff's federal law claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismiss them as well (doc. 14-1, p.12). As the Court is not dismissing all of Plaintiff's federal law claims, the Court will decline to dismiss Plaintiff's state law claims.

---

> afoul of the ... Fourth Amendment if the accused is seized and arrested ... or other constitutionally secured rights if a case is further pursued. However, these are not claims for malicious prosecution.

(Internal citations omitted).

[9] *See also Scott v. Harris*, 550 U.S. 372, 376, 127 S.Ct. 1769, 1774 (2007); *Jackson v. City of Beaumont Police Dept.*, 948 F.2d 616, 621 (5th Cir. 1992); *Brown v. Glossip*, 878 F.2d 871, 873 (5th Cir. 1989).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (doc. 14) is hereby **GRANTED**, insofar as it dismisses all claims against the East Baton Rouge Parish Sheriff's Office, all claims against Deputy Shawn Glover in his official capacity, and the claims of unlawful arrest and malicious prosecution against Deputy Shawn Glover in his personal capacity. Defendants' motion to dismiss is **HEREBY DENIED** as to all other claims.

Baton Rouge, Louisiana, May 15, 2012.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA